1  Jason Levin, WSBA No. 21964
2  Steptoe & Johnson LLP
   633 West Fifth Street
3  Suite 1900
4  Los Angeles, CA 90071
   (213) 439-9400
5  jlevin@steptoe.com
6  *Attorney for Chevron U.S.A. Inc.*
7
8  Angelo J. Calfo, WSBA No. 27079
   1301 Second Avenue, Suite 2800
9  Seattle, WA 98101
10 Phone: (206) 407-2200
   Fax: (206) 407-2278
11 angeloc@calfoeakes.com
12
   *Attorneys for Defendants Syngenta AG and*
13 *Syngenta Crop Protection, LLC*
14
15        **UNITED STATES DISTRICT COURT**
          **EASTERN DISTRICT OF WASHINGTON**
16

| | |
|---|---|
| 17  MARY BELSBY, as Personal Representative of the Estate of SHELL BELSBY, | Civil Action No. _____ |
| 18  Plaintiff, | (Formerly Case No. 21-2-03049-32 in the Superior Court of Washington for Spokane County) |
| 19  v. | **NOTICE OF REMOVAL** |
| 20  CHEVRON U.S.A., INC.; CHEVRON PHILLIPS CHEMICAL COMPANY LP; ST. JOHN HARDWARE & IMPLEMENT CO., INC.; SYNGENTA CROP PROTECTION, LLC; and SYNGENTA AG, | |
| 24  Defendants. | |

25
26        Defendants Syngenta Crop Protection LLC and Syngenta AG (collectively

"Syngenta"), and Chevron U.S.A. Inc. ("Chevron"), pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1367, hereby remove the above-captioned action from the Superior Court of Washington for Spokane County, case number 21-2-03049-32, to the United States District Court for the Eastern District of Washington.  In support of removal, Syngenta and Chevron provide this "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).

## NATURE OF REMOVED ACTION

1.     On October 21, 2021, Plaintiff filed this action, *Mary Belsby, as personal representative of the estate of Shell Belsby v. Chevron U.S.A., Inc. et al.*, in the Superior Court of Washington for Spokane County, case number 21-2-03049-32, alleging claims based upon exposure to products containing paraquat and Shell Belsby's subsequent diagnosis with Parkinson's disease and death.

2.     The Complaint asserts four causes of action against Syngenta and Chevron, namely: (i) negligence; (ii) strict product liability – design defect; (iii) strict product liability – failure to warn; and (iv) breach of express and implied warranties.  The Complaint also purports to assert claims for negligence and breach of express and implied warranties against St. John Hardware & Implement Co., Inc. ("St. John").

3.     The thrust of Plaintiff's allegations is that by manufacturing, distributing, or selling products containing paraquat, Syngenta and Chevron exposed Shell Belsby to an increased likelihood of developing Parkinson's disease, a disease that he was later diagnosed with.

4.     This alleged conduct purportedly harmed Mr. and Mrs. Belsby by causing them to incur medical expenses, lost income or earning capacity, loss of consortium, emotional distress, grief, loss of enjoyment of life, inconvenience, mental anguish, destruction of the spousal and child-parent relationships, and pain

1    and suffering.  Compl. ¶ 131.

2        5.    Over 400 similar cases—alleging Parkinson's disease based on past

3    exposure to paraquat—have been filed against Syngenta and Chevron in federal

4    courts around the country, and consolidated into a multidistrict litigation in the

5    Southern District of Illinois.  *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004

6    (S.D. Ill. 2021).  That MDL is still in its early stages, and it is moving expeditiously

7    with new cases regularly being directly filed in the proceeding and transferred to it

8    from other jurisdictions.  By filing this case in state court, Plaintiff is seeking to

9    avoid the MDL, which is designed to ensure the most efficient and orderly

10   administration of a large number of cases presenting common issues of law and fact.

11       6.    This case is removable based on diversity jurisdiction because Plaintiff

12   has fraudulently joined St. John. St. John has never sold, purchased, distributed,

13   traded or otherwise transacted any business involving paraquat-containing products,

14   so Plaintiffs cannot maintain a cause of action against it.  The court should thus

15   ignore the joinder of St. John in evaluating diversity jurisdiction.

16       7.    Plaintiff's claims are also removable because they arise under federal

17   law.  Plaintiff's claims are premised on the breach of duties governed by the Federal

18   Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq*. ("FIFRA"), as

19   regulated and enforced by the Environmental Protection Agency ("EPA").  *See, e.g.*,

20   7 U.S.C. § 136a (EPA must register any pesticide, including herbicides, before it is

21   sold domestically after weighing the economic, social, and environmental benefits

22   and costs of the product); *id*. § 136(q)(1)(F) (FIFRA empowers EPA to control

23   warnings, directions, and packaging, and specifically mandates warnings for

24   pesticides that are "adequate to protect health and the environment"); *id*. §

25   136j(a)(2)(G) (making it illegal to use any pesticide "in a manner inconsistent with

26   its labeling"); 40 C.F.R. § 152.160 (paraquat is a "restricted use" pesticide and may

1   only be applied by a certified "restricted use" applicator or someone acting under a
2   certified applicator's "direct supervision"); *id*. §§ 171.103, 171.105 (pesticide
3   applicators are taught to read and understand warnings and instructions for paraquat
4   and must take "[m]easures to avoid or minimize adverse health effects").

5   8.   Because any duties relating to paraquat arise exclusively from federal
6   law—FIFRA and its underlying regulations—alleged violations of federal law form
7   the basis for the underlying claims.  It would be illegal for any state to require that a
8   paraquat label include a warning about the risk of developing Parkinson's disease
9   because EPA has determined that no causal link exists.  *See*  7 U.S.C. § 136v(b)
10  (states are prohibited from imposing "labeling or packaging" requirements "in
11  addition to or different from" those required under FIFRA); EPA, Paraquat
12  Dichloride:  Interim Registration Review Decision, Case No. 0262, at 18 (July 13,
13  2021), *available at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-
14  0855-0307 ("[T]he weight of evidence [is] insufficient to link paraquat exposure
15  from pesticidal use of U.S. registered products to [Parkinson's disease] in humans.").

16  9.   Federal courts have routinely grappled with an important question that
17  will be raised here: which state law claims regarding pesticide products are
18  preempted under FIFRA.  *See, e.g., Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d
19  1199, 1208 (9th Cir. 2002) (state law claims regarding pesticide manufacturer's label
20  instructions preempted by FIFRA); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th
21  Cir. 1994) (common-law claims based upon manufacturer's alleged failure to
22  properly label pesticides and to warn of their dangers preempted by FIFRA); *Lescs
23  v. William R. Hughes, Inc.*, 168 F.3d 482 (4th Cir. 1999) (tort claims regarding
24  injuries allegedly caused by pesticide exposure preempted by FIFRA); *King v. E.I.
25  Dupont De Nemours & Co.*, 996 F.2d 1346 (1st Cir. 1993) (FIFRA preempted state
26  law tort claim due to failure to warn); *Nat'l Bank of Com. of El Dorado, Arkansas v.*

1  *Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999) (inadequate labeling, failure to warn,
2  and express and implead breach of warranty claims preempted by FIFRA); *Papas v.*
3  *Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993) (common-law tort claims based on
4  inadequate labeling of pesticides preempted by FIFRA); *Indian Brand Farms, Inc.*
5  *v. Novartis Crop Prot. Inc.*, 617 F.3d 207 (3d Cir. 2010) (failure to warn claims and
6  claims based on alleged misrepresentation in pesticide marketing brochure not
7  preempted).

8      10.    In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this
9  Court, a copy of the Complaint is attached as **Exhibit A** ("Compl.").  A copy of the
10  Summons served on Syngenta and Chevron is attached as **Exhibit B**.  A copy of the
11  declaration of Scott Hennessey ("Hennessey Decl."), dated November 11, 2021, is
12  attached as **Exhibit C**.

13                      **TIMELINESS OF REMOVAL**

14      11.    Syngenta was served with the Complaint on or about October 27, 2021.
15  Chevron was served with the Complaint on or about October 28, 2021.  St. John was
16  served with the Complaint on or about October 19, 2021.  Defendants have not
17  responded to the Complaint in state court.

18      12.    In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely
19  filed because it is within 30 days of Defendants being served.  *See Murphy Bros.,*
20  *Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal
21  period begins to run upon service of summons and complaint).

22                      **PROPRIETY OF VENUE**

23      13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because
24  the Superior Court of Washington for Spokane County, where the state court action
25  was pending prior to removal, is a state court within this federal district and division.
26

## BASIS OF REMOVAL

### Diversity Jurisdiction

14.    Removal is proper pursuant to 28 U.S.C. §§ 1332 and 1441 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

15.    Plaintiff Mary Belsby, as personal representative of the estate of Shell Belsby, is a citizen of the state of Washington.  Compl. ¶¶ 4-5.

16.    Syngenta Crop Protection LLC operates its headquarters in Greensboro, North Carolina.  Syngenta's sole member is Syngenta Seeds, LLC, which is headquartered in Downers Grove, Illinois.  The sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is incorporated and headquartered in Delaware.  Syngenta Crop Protection LLC is therefore a citizen of the state of Delaware.  *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 195 (1990); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)

17.    Syngenta AG is headquartered in Basel, Switzerland, and incorporated in Switzerland, and is thus a foreign citizen.

18.    Chevron U.S.A. Inc. is headquartered in San Ramon, California and incorporated in the state of Pennsylvania, and it is thus a resident of those two states.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (citing 28 U.S.C. § 1332(c)(1)).

19.    Chevron Phillips Chemical Company LP is a limited partnership organized under the laws of Delaware with its headquarters in Texas.  A limited partnership is a citizen of all the states in which its members are citizens.  *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 195 (1990); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Chevron Phillips Chemical Company LP is jointly owned by Chevron Phillips Chemical Holdings I LLC and Chevron Phillips Chemical Holdings II LLC, which are themselves owned by

1 Chevron Phillips Chemical Company LLC.  Chevron U.S.A. Inc. and Phillips 66
2 Company jointly own Chevron Phillips Chemical Company LLC.  Chevron U.S.A.
3 Inc. is incorporated in the state of Pennsylvania and has its headquarters in San
4 Ramon, California.  Phillips 66 Company is headquartered in Houston, Texas and
5 incorporated in the state of Delaware.  As a result, Chevron Phillips Chemical
6 Company LP is a resident of the states of California, Delaware, Pennsylvania, and
7 Texas.

8        20.    Therefore, complete diversity exists among the parties but for the
9 joinder of St. John as a defendant, and St. John's residency should be excluded for
10 the purposes of determining the existence of diversity jurisdiction.

11       21.    *First,* the residency of St. John should be disregarded because it has
12 been fraudulently joined in this proceeding in an attempt to destroy diversity.  *See,*
13 *e.g., Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1067-70 (9th Cir. 2001)
14 (affirming denial of motion to remand where in-state defendant was named solely to
15 defeat diversity jurisdiction); *ZYZZX 2 v. Wells Fargo Bank, N.A.*, 715 F. App'x 610,
16 611 (9th Cir. 2017) ("A district court may disregard the citizenship of a fraudulently
17 joined defendant in determining whether diversity jurisdiction is present.");
18 *Hamilton Materials, Inc. v. Dow Chem. Corp*., 494 F.3d 1203, 1206 (9th Cir. 2007)
19 (Joinder is fraudulent "[i]f the plaintiff fails to state a cause of action against a
20 resident defendant, and the failure is obvious according to the settled rules of the
21 state.").

22       22.    A defendant is fraudulently joined if "the plaintiff fails to state a cause
23 of action against a resident defendant, and the failure is obvious according to the
24 settled rules of the state."  *Morris,* 236 F.3d at 1067 (quoting *McCabe v. General*
25 *Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987)).  Plaintiff has fraudulently joined
26 Defendant St. John because it has never sold, purchased, distributed, traded or

otherwise conducted any business with consumers involving any paraquat-containing product. Hennessey Decl. ¶ 4. St. John has never sold any farm herbicide or pesticide during its retail history, and it is neither a licensed dealer of paraquat-containing products nor of any other farm herbicide or pesticide. *Id*. ¶ 3, 5. St. John's business dealings with Plaintiff Mary Belsby and Shell Belsby were limited to the selling and repairing of farm equipment and never involved any transaction involving paraquat-containing products. *Id*. ¶ 7. Thus, St. John cannot be held liable for the alleged injury to Mr. and Mrs. Belsby because it did not sell, and indeed had no connection whatsoever, to the product that caused the alleged injury. *See Morris,* 236 F.3d at 1068 (defendant was fraudulently joined where affidavit made it "abundantly obvious" that plaintiff "could not possibility prevail" on claim against in-state defendant); *Phillips v. USAA Cas. Ins. Co*., No. 2:16-CV-0381, 2017 WL 26907, at *2 (E.D. Wash. Jan. 3, 2017) ("[F]raudulent joinder claims may be resolved by considering summary judgment-type evidence such as affidavits.").

23.    Complete diversity exists when an improper party such as Defendant St. John, against whom Plaintiff has no right of recovery, is fraudulently joined. *See Wilson v. Republic Iron & Steel Co*., 257 U.S. 92, 97 (1921) (joinder of a non-diverse defendant as "a sham or fraudulent device" will not prevent removal); *Ritchey v. Upjohn Drug Co*., 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds"); *Cuevas v. BAC Home Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011) (improper joinder exists if "there is no possibility of recovery by the plaintiff against an in-state defendant"); *In re Briscoe*, 448 F.3d 201, 209–10 (3d Cir. 2006) (time-barred claims against non-diverse defendant constituted fraudulent joinder). Here, there is no right to recovery against St. John, and St. John's citizenship should be disregarded for the purpose of determining diversity jurisdiction.

24.    ***Second,*** the amount in controversy in this proceeding exceeds $75,000. A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  The defendant is only required to present evidence supporting that plausible allegation if the allegation is challenged by the plaintiff or the court.  *Id.*  However, the court may review any evidence submitted with the notice of removal, and should analyze the "chain of reasoning" and "underlying assumption[s]" employed by the defendant to establish that the amount-in-controversy requirement is met.  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015)

25.    When "a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence" that the amount-in-controversy requirement is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

26.    Where, as here, a plaintiff alleges "serious and permanent injuries," a defendant may "intelligently ascertain" that the amount sought exceeds $75,000. *Lacombe v. Costco Wholesale Corp.*, No. 2021 WL 291453, at *2 (C.D. Cal. Jan. 27, 2021).

27.    The amount in controversy is met here because Plaintiff seeks substantial monetary damages for medical expenses, lost income or earning capacity, loss of consortium, emotional distress, grief, loss of enjoyment of life, inconvenience, mental anguish, destruction of the spousal and child-parent relationships, and pain and suffering.  Compl. ¶ 131.  Indeed, the cost of Mr. Belsby's medical treatment alone likely satisfies the $75,000 requirement.  *See* Matthew Gavidia, "Study Details Economic Burden of Parkinson's Disease in the United States," *available at* https://www.ajmc.com/view/study-details-economic-burden-

of-parkinson-disease-in-the-united-states.[1]

28.    The exception to removal based on diversity of citizenship stated in 28 U.S.C. § 1441(b)(2) does not apply because Defendant St. John has been improperly joined in this proceeding for the reasons explained above, and therefore its citizenship should be ignored for purposes of evaluating jurisdiction. *See supra* ¶¶ 15-23.

### Federal Question Jurisdiction

29.    Removal is proper in the alternative pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiff's claims present a substantial federal question.

30.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

31.    "[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). The artful-pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented."). "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived*, 132 F.3d at 831.

---

[1] If Syngenta and Chevron are mistaken on this point, they invite Plaintiff to stipulate that the alleged damages at issue in this proceeding do not exceed $75,000.

32.    Even when state law creates the causes of action, a complaint may raise a substantial question of federal law if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law.").

A.    **Plaintiff's Claims Implicate a Federal Issue That Is Necessarily Raised, Actually Disputed, Substantial, and Capable of Resolution in Federal Court.**

33.    "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

34.    Where, as here, purported state law claims are premised on violations of duties governed by a federal statute, these requirements are satisfied and a federal court has jurisdiction over those claims. *See Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were

premised on failure to satisfy standard of care established in federal statute); *see also Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (concluding a federal question was raised where "Plaintiffs' dependence on federal law permeates the allegations such that the [claims purportedly brought under state law] cannot be adjudicated without reliance on and explication of federal law").

35.    As set forth below, all four requirements for federal jurisdiction over Plaintiff's claims are satisfied.

36.    Although Plaintiff ostensibly pleads claims against Syngenta and Chevron as violations of state law, she bases the underlying theory of liability on alleged violations of federal law or alleged duties arising out of federal law, specifically FIFRA.   Compl. ¶¶ 87-92 (citing FIFRA).   Plaintiff expressly acknowledges that she "do[es] not seek . . . to impose on Defendants any labeling or packaging requirement in addition to or different from those imposed under FIFRA" and "any allegation . . . that a Defendant breached a duty to provide adequate directions for the use of paraquat or warnings about paraquat, breached a duty to provide adequate packaging for paraquat, or concealed, suppressed, or omitted to disclose any material fact about paraquat or engaged in any unfair or deceptive practice regarding paraquat, that allegation is intended and should be construed to be consistent with that alleged breach, concealment, suppression, or omission, or unfair or deceptive practice, having rendered the paraquat 'misbranded' under FIFRA." *Id*. ¶ 92.

37.    Specifically, the Complaint alleges that Syngenta and Chevron violated duties established by federal law by failing to warn about the risks that paraquat allegedly posed to human health.  Compl. ¶¶ 100, 106, 115-22.

38.    FIFRA and its implementing regulations are the exclusive source of the asserted legal duties regarding the labeling, handling, and use of paraquat. *See, e.g.*,

1   7 U.S.C. § 136(q)(1)(F) (FIFRA empowers EPA to control warnings, directions, and
2   packaging, and specifically mandates warnings that are "adequate to protect health
3   and the environment"); *id*. § 136j(a)(2)(G) (it is illegal to use any pesticide "in a
4   manner inconsistent with its labeling").  Indeed, states are *prohibited* from imposing
5   "labeling or packaging" requirements "in addition to or different from" those
6   required under federal law.  *Id*. § 136v(b); *see also Nat'l Meat Ass'n v. Harris*, 565
7   U.S. 452, 459–60 (2012) (holding that such language "sweeps widely—and in so
8   doing … prevents a State from imposing any additional or different—even if non-
9   conflicting—requirements that fall within the scope of the" federal law).
10  Accordingly, Plaintiff's claims are necessarily governed by the federal requirements
11  under FIFRA and require interpretation and application of that statute, as any
12  additional or different duties would be preempted.

13      39.    Plaintiff's theories of liability against Syngenta and Chevron, as
14  pleaded in the Complaint, are thus predicated on allegations that they breached
15  alleged duties owed under FIFRA regarding the distribution and sale of paraquat.
16  Plaintiff asserts, *inter alia,* that Syngenta and Chevron should have included
17  additional or different information on the labels for paraquat products even though
18  the information on those labels is directly approved by the EPA and federal law
19  prohibits any state law from imposing different requirements.  *See, e.g.,* Compl. ¶
20  105.

21      40.    The federal question presented by Plaintiff's claims therefore is "(1)
22  necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution
23  in federal court without disrupting the federal-state balance approved by Congress."
24  *Gunn*, 568 U.S. at 258.

25      41.    ***First***, Plaintiff's claims necessarily require resolution of a federal
26  question—i.e., what obligations and duties did Syngenta and Chevron have under

1   FIFRA to warn about a hypothesized connection between paraquat and Parkinson's.

2   *See Bd. Of Comm'rs,* 850 F.3d at 722-23 (federal question necessarily raised where

3   negligence and public nuisance claims relied on the court's interpretation of the

4   scope of a duty contained in federal law); s*ee also North Carolina ex rel. N.C. Dep't*

5   *of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017)

6   ("Regardless of the allegations of a state law claim, 'where the vindication of a right

7   under state law necessarily turns on some construction of federal law,' the claim

8   arises under federal law and thus supports federal question jurisdiction under 28

9   U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc. v. UBS Securities,*

10  *LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (duty derived from the Exchange Act

11  to operate a fair and orderly market underpinned plaintiff's contract and tort claims

12  and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v.*

13  *Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action

14  under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly

15  granted by federal law or if the action requires construction of a federal statute, or at

16  least a distinctive policy of a federal statute requires the application of federal legal

17  principles.").

18      42.    ***Second***, this federal issue is "actually disputed" because the parties

19  disagree as to the existence and scope of the alleged duties arising under FIFRA.

20  Specifically, the parties dispute whether Syngenta or Chevron had an obligation to

21  warn about, or protect the public from, the alleged association between paraquat and

22  Parkinson's disease, despite the fact that the EPA—the expert agency with regard to

23  all pesticides—has concluded that no such connection exists.  *See* EPA, Paraquat

24  Dichloride:  Interim Registration Review Decision, Case No. 0262, at 18 (July 13,

25  2021), *available at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-

26  0855-0307.

NOTICE OF REMOVAL              - 14 -

43.    The key legal issue in this proceeding—whether exposure to paraquat creates an increased risk of developing Parkinson's disease—is currently under review in the Ninth Circuit.  *See Cal. Rural Legal Assistance Found. v. E.P.A.,* No. 21-71287 (9th Cir. 2021).    The petitioners in *California Rural Legal Assistance Foundation* seek to "set aside, in whole or in part" the EPA's determination that there is insufficient evidence to establish a causal relationship between exposure to paraquat and Parkinson's disease.  *Id.* Ex. A at p. 59.  The Ninth Circuit's review of a federal agency's determination regarding the key legal issue in this proceeding— whether there is evidence of a causal relationship between paraquat and Parkinson's disease—is clear confirmation that this lawsuit centers on a disputed federal issue.

44.    ***Third***, the federal issue presented by Plaintiff's claim is "substantial." *Gunn*, 568 U.S. at 258. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260-61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).  "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

45.    Congress recognized the importance of a nationwide approach to the EPA's regulation of pesticides when it enacted FIFRA.  *See Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205–06 (9th Cir. 2002) ("Congress has afforded the EPA substantial enforcement powers under FIFRA").    FIFRA recognizes the

1  uniquely federal interest in regulating pesticides across the nation and expressly

2  excludes the authority of states to do so.  *See* 7 U.S.C. § 136v(b) (states are

3  prohibited from imposing "labeling or packaging" requirements "in addition to or

4  different from" those required under FIFRA); *see also Bates v. Dow Agrosciences*

5  *LLC*, 544 U.S. 431 (2005) (creating a two-part test for analyzing preemption under

6  FIFRA).  Federal courts are uniquely empowered to answer questions regarding the

7  scope of FIFRA and to evaluate the EPA's decision-making, including with regard

8  to paraquat and Parkinson's disease.  *See Cal. Rural Legal Assistance Found. v.*

9  *E.P.A.*, No. 21-71287 (9th Cir. 2021).

10        46.    This lawsuit raises a substantial federal question even though FIFRA

11  does not provide for a private right of action.  In *Grable*, the Supreme Court held

12  that the absence of a federal cause of action does not necessarily foreclose federal-

13  question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly

14  would both "overturn[] decades of precedent," and "convert[] a federal cause of

15  action from a sufficient condition for federal-question jurisdiction into a necessary

16  one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *NASDAQ OMX Grp., Inc.*, 770 F.3d at

17  1018–19, 1024 (determining that the federal issue was substantial even though the

18  underlying federal statute did not include a private right of action where it was

19  "significant to the development of a uniform body of federal securities regulation");

20  *Ranck v. Mt. Hood Cable Reg. Comm'n*, No. 16-cv-02409, 2017 WL 1752954, at

21  *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable

22  Communications Policy Act raise substantial federal questions and satisfy *Grable*

23  despite the absence of a private right of action).

24        47.    Removal is especially appropriate here because Plaintiff's action is one

25  of hundreds of similar actions nationwide, over 400 of which are pending in the

26  Paraquat MDL in the Southern District of Illinois.  *See In re: Paraquat Prods. Liab.*

1   *Litig.*, 21-md-03004 (S.D. Ill. 2021).

2        48.    ***Fourth***, and finally, the federal issue also is capable of resolution in

3   federal court "without disrupting the federal-state balance approved by Congress."

4   *Gunn*, 568 U.S. at 258.  Indeed, federal courts are afforded exclusive jurisdiction to

5   hear challenges to the EPA's authority to enforce FIFRA.  *See* 7 U.S.C. § 136n.

6   Litigating this case in a state court runs the risk of the state court applying federal

7   requirements in a manner either in tension or in conflict with the way the federal

8   agency tasked with enforcing FIFRA—the EPA—applies them.    The pending

9   petition for review in the Ninth Circuit regarding the EPA's determination regarding

10  paraquat and Parkinson's disease illustrates that federal courts are uniquely situated

11  to answer the central legal questions in this lawsuit. *See Cal. Rural Legal Assistance*

12  *Found. v. E.P.A.*, No. 21-71287, (9th Cir. 2021).  Federal jurisdiction is therefore

13  properly exercised to resolve "disputed issues of federal law" under FIFRA.

14       49.    In sum, removal of this action is appropriate because Plaintiff's "state-

15  law claim[s] necessarily raise a stated federal issue, actually disputed and

16  substantial, which a federal forum may entertain without disturbing any

17  congressionally approved balance of federal and state judicial responsibilities."

18  *Grable*, 545 U.S. at 314; *see also, e.g.*, *Bd. of Comm'rs*, 850 F.3d at 722-23;

19  *NASDAQ OMX Grp.*, 770 F.3d at 1031; *Gilmore v. Weatherford*, 694 F.3d 1160,

20  1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim

21  without the court reaching the federal question, it seems that they cannot win unless

22  the court answers that question.  Thus, plaintiffs' right to relief necessarily depends

23  on resolution of a substantial question of federal law.").

24       **B.    The Court Can Exercise Supplemental Jurisdiction.**

25       50.    If the Court determines that some, but not all, of Plaintiff's claims

26  implicate a substantial federal question, the Court can evaluate whether to retain the

non-federal claims under the doctrine of supplemental jurisdiction which grants jurisdiction over state claims forming part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

51.    It is not necessary to establish that *all* of Plaintiff's causes of action raise a federal question to establish federal jurisdiction. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, "[n]othing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997). Instead, "federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact." *Id.* at 164-65.

52.    Because the Court has original jurisdiction over at least some counts against Syngenta and Chevron, it has supplemental jurisdiction over Plaintiff's remaining counts against the Defendants, which are so related that they "form part of the same case or controversy."

53.    The presence of state law claims, if any, therefore does not defeat this Court's original jurisdiction over the federal claims.

## OTHER REMOVAL ITEMS

54.    Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined and served must join or consent to removal.

55.    All Defendants have been served in this action and consent to removal.

56.    By filing this Notice of Removal, Syngenta and Chevron expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process. If any

1  question arises as to the propriety of removal to this Court, Syngenta and Chevron
2  request the opportunity to submit a brief in support of its position that this case has
3  been properly removed and to present oral argument.

4      57.    Pursuant to 28 U.S.C. § 1446(d), Syngenta and Chevron are
5  contemporaneously filing a Notice of Removal with the clerk of the state court where
6  the lawsuit has been pending and will serve notice of the filing of this Notice of
7  Removal on Plaintiff.

8      **WHEREFORE**, Syngenta and Chevron remove this action, now pending in
9  the Superior Court of Washington for Spokane County, case number 21-2-03049-
10 32, to this Court.

11 Dated:  November 18, 2021              Respectfully submitted,

12

13 */s/ Angelo J. Calfo*                  */s/ Jason Levin*
   Angelo J. Calfo, WSBA No. 27079       Jason Levin, WSBA No. 21964
14 1301 Second Avenue, Suite 2800        Steptoe & Johnson LLP
   Seattle, WA 98101                     633 West Fifth Street
15 Phone: (206) 407-2200                 Suite 1900
   Fax: (206) 407-2278                   Los Angeles, CA 90071
16 angeloc@calfoeakes.com                (213) 439-9400
                                         jlevin@steptoe.com
17
   *Attorneys for Syngenta AG and Syngenta*   *Attorney for Chevron U.S.A. Inc.*
18 *Crop Protection LLC*

19
20
21
22
23
24
25
26

NOTICE OF REMOVAL                - 19 -

1

## **CERTIFICATE OF SERVICE**

2          I HEREBY CERTIFY that on November 18, 2021, I caused the foregoing to

3    be electronically filed with the Clerk of the Court, and that a copy of the foregoing

4    is being furnished by U.S. Mail and e-mail to Andrew S. Biviano, counsel for

5    Plaintiff, at the following addresses:

6    E-Mail

7    andrewbiviano@me.com

8    Mail

9    Law Office of Andrew S. Biviano, PLLC
     1312 N. Monroe Street
10   Suite #285
     Spokane, WA 99201

11                                        */s/ Jason Levin*
                                          Jason Levin
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26